## Pelton v. Pine Creek Municipal Authority

*Gary Wamser* and *Charles R. Rosamilia,* for petitioners.

*Lewis G. Steinberg,* for respondent.

BROWN, *P.J.,* May 23, 1981—

## ISSUES

(1) Whether 53 P.S. §2231 permits a municipal authority providing sewage collection and disposal services to bill for sewer rentals as to a property owner who is not connected to the system?

(2) Whether section 22 of respondent's regulations permits it to charge sewer rentals as to property owners who are not connected to the authority's sewage system?

(3) Whether respondent is required to allow a property owner for reasons of poverty to be placed upon a payment schedule to pay its required $500 tap-on fee?

(4) Whether respondent is precluded from requiring the payment of tap-on fees and sewer rentals from impecunious or low-income property owners?

## FINDINGS OF FACT

Respondent municipal authority was formed sometime prior to 1975. Its existence was brought about by certain sewage disposal problems existing in Dunstable Township, Pine Creek Township and Avis Borough. As a result of investigations and meetings conducted through representatives of the Pennsylvania Department of Environmental Resources, it became inevitable that the affected municipalities were going to have to construct and operate a sewage disposal facility. Instead of waiting for a formal mandate from DER, a municipal authority was formed to service the municipalities previously mentioned. Subsequently, after the issuance and sale of $2,425,000 in sewer revenue bonds, a sewer collection system and sewage treatment and disposal facility was constructed. As such the facility was constructed pursuant to the statu-

tory mandate of the Pennsylvania Sewage Facilities Act of 1956; 35 P.S. §750 et seq. which would have been utilized by DER to force the building of some type of facility.

In order to help liquidate the debt incurred by the aforementioned bond issue as well as to pay for the continued operation of the system, the authority utilized certain grant funds from the United States of America and the Commonwealth of Pennsylvania as well as certain contributions made by industrial establishments within the service area. Also, by resolution passed March 18, 1975, the authority provided for certain tap-on fees to be charged in connection with property served by the system as well as for sewer rentals. The resolution was effective April 1, 1975, and provided in part as follows:

"Section 22 — Sewer rates and other charges are imposed upon and shall be collected from the owner of each improved property which shall be connected with the sewer system for the use of the sewer system, whether such use shall be direct or indirect, which sewer rates and charges shall commence and shall be effective as of April 1, 1975, the required date of connection of each improved property to the sewer system and shall be payable as provided in the regulations and rate schedule."

The sewer rates have been fixed by section 23. Under this resolution a schedule of rates has been established based upon metered water consumption. In addition, a flat quarterly rate has been established for well users and nonmetered water users.

For purposes of the present litigation, Pine Creek Township had also adopted ordinances which required property owners within the township to connect into the authority's sewer lines no later than April 1, 1975, if their buildings were within 150 feet of the aforesaid sewer line. In addition to sewer

rentals, a sewer hookup fee of $500 is required to be paid by each property owner upon being connected to the sewage system. All of the petitioners in this proceeding own homes which are situate in Pine Creek Township and which are within 150 feet of respondent's sewer line.

Petitioner Hatalski owns his home, which was built in 1962. He has not been connected to the sewage system although he has been contacted numerous times by the authority to do so. He has not been employed since 1975, and he and his wife have an income consisting of SSI benefits of approximately $400 monthly.

Petitioners, Mr. and Mrs. Pelton, own their home also situate in Pine Creek Township and have resided there since 1972. After judicial proceedings instituted by the authority, their property was connected to the sewage system on August 1, 1979. They have received billings for sewage services since April 1, 1975, which remain unpaid and are in dispute. Mr. Pelton has been unemployed for some time as a result of injuries and Mrs. Pelton is employed as a teacher's aide with an income of approximately $126.50 every two weeks. As in the case of Mr. Hatalski, the Peltons contend that they are financially unable to pay the back sewage rental fees.

Petitioners, Mr. and Mrs. Myers also reside in Pine Creek Township and their home is also within the area serviced by the authority. They have not hooked up to the sewage system contending that they were unable to pay the entire $500 tap-on fee. They have made efforts to connect to the system and to be placed on a payment plan paying $25 to $50 every quarter to be applied to the tap-on fee. In 1979, Mr. Myers approached the authority with the proposition of being able to pay $300 towards the

tap-on fee and to pay the balance over a period of time. These overtures for payment of a partial fee and a balance over some period of time have apparently been rejected by the authority. Mr. Myers also cites poor employment and lack of income in not being able to hook up to the system. He apparently worked from July of 1977 through July of 1979 for Don Spangler Ford earning $7 per hour. Later he was employed by Helms Motor Express. His current employment status has not been made clear to the court.

With regard to all of the petitioners, the authority is threatening to proceed to shut off their respective water privileges because of the alleged arrearages with regard to past sewage rental fees dating from April 1, 1975. Petitioners are resisting this action on the premise that the authority may only charge sewer rental fees for actual use of sewage services, and further that a consideration of their respective financial circumstances prevents such a shutoff.

## DISCUSSION AND CONCLUSIONS OF LAW

The first issue for consideration is whether respondent can provide for the assessment of sewer rentals as to property owners who are not connected to and do not use the sewage system. The parties have presented different authorities which appear to support their respective positions, and after a careful consideration of those authorities, the court concludes that respondent may legally charge such rentals to property owners regardless of whether the property is connected to and uses the sewage system.

The enabling legislation for the levying of charges for the use of sewers is contained in 53 P.S. §2231 and §2232. Section 2231 in essence provides for the fixing of sewage system rentals by resolution ". . .

for the use of such sewer, sewerage system, or sewage treatment works from the owners of, or the users of water in or on the property served or to be served by it, . . ." In the court's judgment the language referring to property "served or to be served" by the system clearly contemplates that rentals may be charged as to properties that are not actually using the system but who are required users of the system through existing laws.

Respondents have brought to the court's attention the case of Coudriet v. Township of Benzinger, 49 Pa. Commw. 275, 411 A.2d 846 (1980). That case held that nonusers of a sewer system who are obligated to be connected thereto can be required to pay sewage rentals. Unfortunately, the decision does not specifically discuss the provisions of 53 P.S. §2231 nor does it discuss any prior case law in support of its position. The court also notes as pointed out by petitioners that appellants in that case did not have the benefit of counsel and conceivably the statutory construction issue arising out of section 2231 was not presented to the court. While this may be true, the holding of the case is clear as to the same issue presented to this court.

A substantial amount of case law has been submitted by petitioners to the effect that nonusers of sewage systems or facilities cannot be compelled to pay sewer rental fees. A reading of these cases discloses that on the facts before the appellate courts deciding them, petitioners' position is correct. However, the court notes that none of those cases appear to be construing 53 P.S. §2231 and §2232 but instead are construing other statutory provisions. In view of the decision in Coudriet, which would appear to be the latest appellate pronouncement on the subject, the court feels obligated to follow that case until it is either reversed or otherwise limited.

With regard to the second issue, petitioners question whether section 22 of respondent's regulations allows for sewer rental charges as to property owners who are not connected to the sewage system. While that section is not a model of clarity with regard to this particular issue in that it does not directly say that nonusers of the system are subject to sewer rentals, a fair reading of the resolution would permit such a construction. It is unfortunate that in drafting the resolution respondent did not see fit to use clear and unequivocal language in attempting to obtain this result, but the reference in section 22 to charges being made for direct or indirect use can fairly be construed so that "direct use" means actual usage and "indirect use" means potential usage by properties obligated to connect to the system. Therefore, the court rejects petitioners' argument that respondent's regulations do not permit the levy of a sewer rental charge unless the property is actually connected to the system.

The third issue presented in these proceedings relates to whether respondent is required to permit a property owner because of his financial circumstances to be placed on a payment schedule in order to pay the required tap-on fees. This issue is peculiar to the factual circumstances presented on behalf of Mr. and Mrs. Myers who have apparently offered to pay 60 percent of the tap-on fee with the balance to be liquidated by the payment of a quarterly payment.

Neither party has presented any legal authority on the basic question of whether respondent must do this. In the absence of such authority, the court feels obligated to permit respondent to reject such proposed arrangements. However, considering current economic circumstances, one could question the wisdom of such a policy decision to not allow

tap-on fees to be liquidated in this manner provided the property owner complies with his payment obligations. The tap-on fees are substantial and to many property owners represent a burden which could be alleviated to the mutual benefit of such property owners and respondent. However, there is no legal authority which allows the court to impose such a requirement upon respondent.

In this respect the court must be careful to limit its function to deciding issues of law, and not imposing its concepts as to policy decisions which have to be made by respondent. In other words, even though the court feels the judgment of the authority in refusing such an arrangement is questionable, it is within the discretion of the authority to make such a decision.

The fourth and final issue is somewhat related to the previous issue, and that is whether property owners can be required to pay the tap-on fees and sewer rentals if they fall within the category of being impecunious or low-income property owners. Again, no authority has been submitted to the court either in the form of legislation or judicial decisions which permits it to make such a finding.

The court is aware of no authority that prevents the assessment of tap-on fees and sewer rentals as to indigent property owners. To open such an avenue of exclusion from these charges is obviously a matter of considerable significance which would result in the assessment of higher financial burdens on the other users of the system and create substantial problems in determining eligibility for such relief. The appropriate place for this issue to be addressed would be in the legislative branch of government and petitioners' arguments ought to be presented in that forum.

## ORDER

And now, May 23, 1981, based upon the foregoing adjudication, it is hereby ordered and decreed that petitioners' requests for declaratory relief be dismissed and the requested relief be denied.